IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CYWEE GROUP LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD. and | § | Case No. 2:17-CV-140-WCB |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are <u>Plaintiff's Motion for Leave to Supplement Expert Reports to Include Third-Party Discovery</u>, Dkt. No. 176, and <u>Defendants' Motion to Strike Plaintiff's Untimely Supplemental Infringement Charts</u>, Dkt. No. 187. On October 24, 2018, the Court held a hearing on various motions in this case, including the two motions referenced above. After considering the arguments made in the parties' briefs and during the hearing, the Court GRANTED Plaintiff's Motion for Leave to Supplement Expert Reports to Include Third-Party Discovery and DENIED Defendants' Motion to Strike Plaintiff's Untimely Supplemental Infringement Charts. The Court ruled on the motions in open court and noted the decisions in a minute order issued on October 26, 2018. Dkt. No. 238, at 2. This memorandum opinion and order details the reasons for the Court's rulings on those two motions.

**I. Governing Legal Principles**

Although the procedural posture of the two motions and the background facts pertinent to each are somewhat different, the issues are similar. In the motion filed by the defendants ("Samsung"), the issue is whether the Court should permit the plaintiff ("CyWee") to amend its

1

infringement contentions after the deadline for serving infringement contentions has passed. Samsung's motion is addressed to CyWee's effort to amend its infringement contentions to add a theory that some of the accused devices use a Samsung algorithm to implement their sensor fusion functionality, rather than an Android algorithm, as CyWee had initially contended.

In the motion filed by CyWee, the issue is whether the Court should grant a two-week extension of the period for filing expert reports. The necessary effect of granting CyWee's motion, however, would be to allow CyWee to pursue a theory of infringement that was not in its initial infringement contentions—the theory that some of the accused devices use a Qualcomm algorithm to implement their sensor fusion functionality, rather than an Android algorithm, as CyWee initially contended in its infringement contentions. Because permitting the filing of expert reports incorporating a new theory of infringement would require the service of new infringement contentions, the Court treats CyWee's motion as addressing both the date for serving its expert reports and the deadline for serving amended infringement contentions.

The Discovery Order entered in this case provided that the plaintiff need not comply with the requirement in the local rules to file infringement contentions for claim elements reciting a software limitation "until 30 days after the source code for each Accused Instrumentality is produced by the opposing party." Dkt. No. 35, at 2. The parties dispute when the source codes for the various accused products in this case were produced. Samsung argues that the source code for the Samsung-algorithm products was produced as early as March 23, 2018, and the source code for the Qualcomm-algorithm products was made available as of July 25, 2018. Under Samsung's theory, because the amended infringement contentions were not served within 30 days of those dates, the amended infringement contentions are untimely, and the extension of time for filing expert reports should not be granted. CyWee contends that the source code for the

Samsung-algorithm code was not produced for inspection until August 14, 2018, and that the amended infringement contentions, which were served on September 10, 2018, were therefore timely. Even if a fully searchable version of Samsung-algorithm code is regarded as having been produced as early as July 30, 2018, CyWee contends that the period of delay is short and excusable in light of the need to confirm whether the proper files were included in the source code that was being produced. As for the Qualcomm-algorithm source code, CyWee contends that while Qualcomm produced the relevant source code on July 25, 2018, CyWee required a deposition of a Qualcomm representative to facilitate the efficient production and identification of relevant information. Given that the only date available for the deposition was October 2, 2018, the request for an extension of time for filing expert reports (and the accompanying request for leave to file infringement contentions reflecting the contents of the expert report) should be granted.

Courts in this district apply a non-exclusive list of factors when considering whether to grant leave of court permitting a party to amend its infringement or invalidity contentions after the deadline for serving those contentions has passed. Those factors are: (1) the length of the delay and its potential impact on the judicial proceedings; (2) the reason for the delay, including whether it was within the reasonable control of the movant; (3) whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent; (4) the importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of procedure; and (5) the danger of unfair prejudice to the non-movant. *See Sycamore IP Holdings LLC v. AT&T Corp.,* No. 2:16-cv-588, 2017 WL 4517953, at *2 (E.D. Tex. Oct. 10,

2017); *Allure Energy, Inc. v. Nest Labs, Inc.*, 84 F. Supp. 3d 538, 540–41 (E.D. Tex. 2015); *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:06-cv-151, 2009 WL 5842062, at *2 (E.D. Tex. Mar. 30, 2009); *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 625 (E.D. Tex. 2007); see also *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-cv-766, 2017 WL 3283325, at *2 (E.D. Tex. Aug. 2, 2017) (same principles applicable to whether to strike or permit amendment of invalidity contentions); *Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-cv-158, 2008 WL 7180756, at *2-3 (E.D. Tex. May 1, 2008) (same). With respect to the issue of diligence, the burden of proof is on the party seeking leave to establish diligence, rather than on the opposing party to establish lack of diligence. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

After carefully considering the circumstances leading to the dispute over CyWee's amendment of its infringement contentions and the request for an extension of the date for filing expert reports, the Court makes the following findings:

1. With respect to the Samsung-algorithm products, given the considerable confusion over the production of the pertinent source code, CyWee was justified in concluding that it was not until Samsung's offer to produce its source code as of July 30, 2018, at the earliest, that the 30-day period for amending its infringement contentions began to run. Thus, the filing of the infringement contentions with respect to the Samsung-algorithm products, which occurred on September 10, 2018, was at most delayed 12 days.

2. With respect to the Qualcomm-algorithm products, the source code was produced on July 25, 2018. Accordingly, any delay in amending the infringement contentions with regard to the Qualcomm algorithm products was, at most, 39 days. However, the Court acknowledges CyWee's representation that without a deposition of a Qualcomm

representative, CyWee was unable to identify relevant information in the source code until October 2, 2018.

3. The short periods of delay at issue in this case have had no material impact on the judicial proceedings, as a date for trial has not yet been set and other deadlines have not been adversely affected by the delay.

4. The background circumstances that led to the delay in amending the infringement contentions are attributable to CyWee's lack of information—or at least its lack of recognition—that some of the accused devices were using a Qualcomm algorithm for their sensor fusion technology and that others were using a Samsung algorithm, which was contrary to CyWee's prior understanding. Whether that misunderstanding was chargeable to CyWee and thus the long period between the service of CyWee's initial infringement contentions and the service of its amended infringement contentions was under the reasonable control of CyWee is a difficult issue. The Court has resolved that issue by determining that CyWee's misunderstanding was reasonable and that the delay was therefore not reasonably chargeable to CyWee.

5. While CyWee delayed for a period of time in seeking access to Qualcomm and Samsung's source code, that delay was not the result of unreasonable lack of diligence. Once the need to amend the infringement contentions became clear, CyWee was diligent in conducting the discovery that ultimately led to CyWee's amending its contentions, even though that process took several months to complete.

6. The amendment of the infringement contentions is important to the case, as it appears that the effect of denying an amendment would be that CyWee's claims as to the devices

using the Qualcomm and Samsung algorithms would fail, at least in this proceeding, or would be significantly compromised.

7. The prejudice to Samsung resulting from the delays is minimal. While amending its infringement contentions allows CyWee to proceed on portions of the case that might otherwise be barred, the loss of an opportunity to benefit from that windfall does not constitute prejudice to Samsung. The only prejudice to Samsung that the Court can perceive is the burden of supplementing its expert report on infringement to address the Qualcomm- and Samsung-algorithm theories of infringement. The Court does not regard that burden as constituting severe or unfair prejudice, as Samsung has long understood that its products contain code from those sources and has understood for months that CyWee has been seeking the discovery needed to prove its case as to those products.

## II. Factual Background

To assess the reasons for the various delays in the discovery process and to assess CyWee's diligence during that period, it is necessary to examine the timeline of the discovery proceedings in some detail.

CyWee offered evidence that it conducted negotiations with Samsung for a period of about six months before filing suit. During those pre-suit negotiations, CyWee presented Samsung with claim charts showing why CyWee believed that Samsung's products infringed the patents-in-suit. CyWee's presentations, according to its evidence, cited Samsung's use of Android sensor fusion code in the products at issue. In response to those claim charts, Samsung did not deny that its products used Android sensor fusion code, nor did Samsung state that it used some code other than Android sensor fusion code. Dkt. No. 206-1, at ¶¶ 2-4. Samsung has offered no contrary evidence on that point.

After suit was filed, CyWee served its initial infringement contentions on July 12, 2017, accusing 15 Samsung products of infringement. CyWee subsequently served amended infringement contentions that added three new products. After Samsung moved to strike the amended infringement contentions as untimely, Dkt. No. 41, CyWee moved for leave to amend its infringement contentions, Dkt. No. 44. The Court granted the motion for leave to amend and denied the motion to strike. Dkt. Nos. 58 and 63.

Samsung made its initial discovery disclosures in August 2017. Those disclosures listed individuals at various companies that were identified as "[t]hird-party provider[s] of accused hardware and software components," and that those individuals were "[k]nowledgeable about sensors and sensor fusion algorithms used in accused products." Dkt. No. 215-2, at 7-8. In October 2017, Samsung responded to one of CyWee's interrogatories (interrogatory no. 21) by stating that the "algorithm processing chip" for several of the accused devices was manufactured by other companies, including Broadcom and Qualcomm. Dkt. No. 176-3, at 42.

In January 2018, CyWee requested various items of discovery from Samsung, including all source code documentation for the accused products "related to the functionality accused in CyWee's infringement contentions in this case." Dkt. No. 160-2, at 4. On March 9, 2018, CyWee followed up with a further request (apparently an oral request) that Samsung make its source code available for inspection. Dkt. No. 187-1, ¶ 7; Dkt. No. 187-10, at 1.

Samsung replied to that request by stating that the source code for its accused products would be made available for inspection in its offices in Atlanta starting on March 23, 2018. Dkt. No. 187-10, at 1. At that time, along with a considerable volume of other discovery materials, Samsung produced a spreadsheet that listed, among other information, the "sensor fusion algorithm" for various Samsung products. The column headed "sensor fusion algorithm"

7

contained various entries, including listing "Qualcomm" for certain products and listing "SEC [Samsung Electronics Company]" for others. Dkt. No. 197-2.

CyWee advised Samsung that its expert would be available to examine the source code on May 8 and 9, 2018. At that time, a team from CyWee traveled to Atlanta to begin examining the source code. They had difficulties in doing so, however. According to CyWee (and unrebutted by Samsung), only a small portion of the source code for only a small subset of the accused products was made available at that time. When Samsung provided more code the next day, CyWee's team discovered that the code was stored on an external drive that was not indexed, frequently locked up during review, and could not be searched to determine where the functions related to sensor fusion were located. Dkt. No. 206-2, at ¶¶ 6-7, 12.

Over the next several days, the parties negotiated over the production of Samsung's source code material. On May 11, Samsung stated that CyWee "should have been aware that much of the relevant source code would be with third parties," because Samsung's discovery responses "provid[ed] more than adequate information for CyWee to have discerned that many of the accused products use a third-party algorithm processing chip and a third-party algorithm." Dkt. No. 176-5, at 8-9. In support of that contention, Samsung pointed to its initial disclosures in August 2017 and its response to interrogatory no. 21 submitted in October 2017. CyWee disputed that the August disclosures or the October interrogatory response had put CyWee on notice that the algorithms in many of Samsung's accused products were produced by others and that the code was not in Samsung's possession. *Id.* at 7-8.

On May 15, Samsung disclosed that the third parties in question had never provided Samsung with the relevant source code and that Samsung did not have possession of the third-party source code that CyWee was seeking. Samsung advised CyWee that in order to obtain that code

CyWee would have to seek it through discovery directed to the third parties. *Id.* at 7. On May 17, 2018, Samsung offered to request that the third parties provide their source code to CyWee; Samsung made such a request to Qualcomm by letter, but Qualcomm did not respond to Samsung's letter, and CyWee was unable to obtain access to the Qualcomm source code at that time.

On May 21, CyWee emailed Samsung, raising multiple questions regarding the review of Samsung's source code, including the sensor fusion code. Dkt. No. 206-16. On June 5, Samsung responded to CyWee's May 21 inquiry. With regard to the request that Samsung confirm that the Android sensor fusion code was the same as the code Samsung had already produced, Samsung replied that the Android sensor fusion code is not used in Samsung products. Dkt. No. 206-16, at 23. CyWee responded by insisting that Samsung could not deny that the Android sensor fusion algorithm was included on some of the accused devices, since Samsung had previously produced that code in response to a discovery request. *Id.*

During June 2018, the parties exchanged emails regarding the production of the pertinent source code. CyWee noted that some of the information it had received from Samsung had been inconsistent, and it requested that Samsung clarify its responses on those points. Samsung responded that CyWee's continuing requests for access to the pertinent source code were "both expansive and vague." Dkt. No. 176-4, at 20-23.

In response to CyWee's further objections to the state of Samsung's production, Samsung on July 2, 2018, explained that it had provided CyWee with a complete copy of the two versions of its internally developed sensor fusion algorithms. Samsung explained that the Android algorithms "are not used in any of the accused products (they are 'dead' or inactive code)." Dkt. No. 176-4, at 19.

CyWee responded the next day that Samsung had not produced the code that replaced the functions of the "dead" Android code or the names of the applications containing that code. CyWee also requested that Samsung's Rule 30(b)(6) witnesses be prepared to testify about Samsung's in-house applications that purportedly performed the sensor fusion function and about Samsung's allegation that the Android code on its accused products was "dead." *Id.* at 18-19. Samsung responded that its witnesses would be prepared to address those questions in their depositions scheduled for late July and early August in Korea.

On July 3, Samsung proposed to make available for CyWee's inspection the source code for various products that used the internally developed Samsung sensor fusion algorithm. Samsung offered to provide that material for inspection in local counsel's offices in Tyler, Texas. Dkt. No. 187-14.

Beginning on July 26, CyWee took the deposition of Dr. Gongbo Moon, Samsung's corporate representative on topics related to the sensor fusion algorithms used in the accused products. Dr. Moon testified that the source code in each accused product was modified to circumvent the Android sensor fusion code in favor of Samsung's own algorithm or a third-party algorithm. Dkt. No. 206-14. During the deposition period, on July 30, Samsung advised CyWee that as of that date a fully searchable version of the source code for the devices using the Samsung sensor fusion technology was available for inspection in Tyler, Texas. Dkt. No. 187-15.

Based on Dr. Moon's deposition, on July 31, CyWee requested assurances from Samsung that certain specific source code was produced. The requested source code included files for Samsung's "SensorService.cpp," the file that, according to Dr. Moon, had been modified to run Samsung's own sensor fusion algorithm or a third-party algorithm, rather than the standard Android code. Dkt. No. 206-15; Dkt. No. 206-14 (65:11-18).

10

On August 10, Samsung confirmed that the requested source code, including the specific files requested by CyWee, would be available for review. On August 14 and 15, CyWee inspected that source code. Twenty-seven days later, CyWee served supplemental infringement contentions, in the form of claim charts, for three of Samsung's accused products. Dkt. No. 187, at 4.

In the meantime, with respect to CyWee's efforts to obtain source code relating to the Qualcomm sensor fusion algorithm, Qualcomm failed to respond to Samsung's request that it produce its source code to CyWee. Accordingly, on May 31, 2018, CyWee subpoenaed Qualcomm for that material. On June 15, 2018, both Qualcomm and Samsung filed objections to the subpoena. The parties then engaged in negotiations over the subpoena.

After extended negotiations, Qualcomm produced source code on July 25, which CyWee's expert reviewed on August 6. However, CyWee subsequently advised Qualcomm that its expert had not been able to locate key operations within the source code. Dkt. No. 176-17. When Qualcomm responded on August 17 that it was not willing to volunteer any more information about the source code, CyWee promptly served Qualcomm with a deposition subpoena. *Id.* Qualcomm initially objected to the deposition subpoena, but ultimately agreed to submit to a deposition. Because Qualcomm's expert was not available until October 2, the deposition was scheduled for that day. It was at that point that CyWee moved for leave to file a supplement to its expert report in order to incorporate the information regarding the Qualcomm sensor fusion algorithm. Dkt. No. 176.

### III. Discussion

Of the non-exclusive list of factors the courts in this district consider when determining whether to grant leave of court permitting a party to amend its infringement or invalidity contentions after the deadline for serving those contentions has passed, this Court finds two

factors critical to the disposition of these motions: whether there was a good reason for CyWee's delay in amending its infringement contentions and whether CyWee showed reasonable diligence once the need to amend its contentions became apparent.[1] Based on the timeline of events and the findings supported by the evidence proffered by the parties, the Court draws the following conclusions:

First, although CyWee could have sought to review the Samsung source code at the outset of the case, or after the initial disclosures in August 2017, the delay in requesting access to the source code until January 2018 was not unreasonable. That is so particularly in light of CyWee's belief (not corrected by Samsung at any point during the pre-suit negotiations) that all of Samsung's devices ran the Android sensor fusion code.

Second, the delay between the time that Samsung made the source code available as of March 23, 2018, and the time when CyWee's team traveled to Atlanta to examine the code was not unreasonable, particularly given the limited availability of CyWee's expert.

Third, the effort to examine the code in Atlanta was unsuccessful; while it is not entirely clear why that effort did not succeed, CyWee's account is that the code was largely inaccessible, incomplete, and not indexed, and Samsung has not specifically rebutted that contention. The Court therefore concludes that it was not unreasonable for CyWee to attempt to obtain access to Samsung's source code in other ways.

Fourth, the facts relating to Qualcomm do not suggest a lack of diligence on CyWee's part. When CyWee discovered that Qualcomm was involved with the sensor fusion technology in Samsung's devices, CyWee requested assistance from Samsung in obtaining Qualcomm's source code for that functionality. Samsung wrote a letter to Qualcomm requesting its cooperation, but

---

[1] As noted above, the other factors (i.e., length of delay, importance of the matter, and danger of unfair prejudice) all clearly point in favor of CyWee.

that was the limit of Samsung's cooperation in obtaining Qualcomm's assistance. Moreover, when CyWee served a subpoena on Qualcomm for the information, Samsung impeded CyWee's discovery effort by objecting to the subpoena. Obtaining information from Qualcomm turned out to be a slow process, a fact that cannot be laid at CyWee's doorstep. Although CyWee actively sought Qualcomm's cooperation as early as June 2018, Qualcomm did not produce its source code until the end of July. And even then, CyWee needed information from a knowledgeable Qualcomm witness to understand the functioning of the source code, and Qualcomm did not make that witness available until October 2, 2018. Under these circumstances, the Court finds nothing to fault in CyWee's conduct with regard to the Qualcomm discovery, at least once CyWee focused on the fact that some of the devices used a Qualcomm algorithm to perform the sensor fusion functions rather than the Android algorithm.

Fifth, with respect to those devices that used Samsung's own code, there were various indications from Samsung, beginning with the March 23, 2018, spreadsheet and continuing into May and June of 2018, that the Android code was not the operative code in Samsung's devices.[2] CyWee might well have garnered from those disclosures that Samsung was not using the Android code as the basis for its sensor fusion technology. However, perhaps because it was confused by the fact that the Samsung products still contained the Android code, CyWee did not recognize at that time that the Android code was irrelevant to the sensor fusion function in Samsung's products. Therefore, it was not clear to CyWee until July 2, 2018, that the Android code in those devices was "dead." At that point, CyWee sought to obtain access to pertinent portions of Samsung's internally developed code, and access was ultimately promised on July 30, 2018. After obtaining

---

[2] The Court does not regard the August 2017 initial disclosures or the October 2017 interrogatory as being sufficiently specific to put CyWee on notice that the Android algorithm was not used in Samsung's accused products.

13

confirmation by August 10 that the Samsung code contained all the elements CyWee was seeking, CyWee promptly reviewed that code on August 14 and 15. The amended infringement contentions with regard to the Samsung-algorithm products were served 27 days later. During that period, CyWee cannot fairly be charged with failing to act promptly to obtain the information it needed.

In sum, the picture that emerges from the evidence presented to the Court is that CyWee, while not always as prompt in seeking materials or recognizing blind alleys as it could have been, was reasonably diligent in seeking the pertinent source code throughout the discovery period in light of the difficulties it encountered. While CyWee might have deduced from communications along the way that Samsung's devices used algorithms other than the Android algorithm, it was not until July 2018 that Samsung explicitly stated that the Android code, although found in Samsung's products, was "dead" and had no functional role in those devices. At that point, CyWee essentially had to start over, both with respect to the products that incorporated the Qualcomm algorithm and the products that incorporated Samsung's own algorithm.[3] Under these circumstances, the Court concludes that CyWee has shown that there were legitimate reasons for the delay in serving its amended infringement contentions and that it was reasonably diligent in seeking relief from the time limits set forth in the Court's docket control order.

For the foregoing reasons, the Court concluded that CyWee's motion to supplement its expert report, Dkt. No. 176, should be GRANTED and Samsung's motion to strike CyWee's untimely supplemental infringement claims, Dkt. No. 187, should be DENIED.

---

[3] Although CyWee places the blame on Samsung for "hiding the ball" at various points in the discovery process, the Court does not find Samsung's conduct in the discovery proceedings to have been improper. While Samsung could have been more forthcoming at certain points and while Samsung was not always as prompt in responding to CyWee's requests as CyWee wanted, for the most part Samsung was responsive and cooperative.

IT IS SO ORDERED.

SIGNED THIS 7th day of November, 2018

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE