**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CYWEE GROUP LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD. | § | Case No. 2:17-CV-00140-WCB-RSP |
| AND SAMSUNG ELECTRONICS | § | |
| AMERICA, INC., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

### FILED UNDER SEAL

Before the Court is a motion by defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., (collectively, "Samsung") for a stay pending inter partes review proceedings. Dkt. No. 291. The motion is GRANTED.

### BACKGROUND

Plaintiff CyWee Group Ltd. ("CyWee") is the owner of U.S. Patent Nos. 8,441,438 ("the '438 patent") and 8,552,978 ("the '978 patent"). CyWee filed its initial complaint in this case on February 17, 2017, and its first amended complaint on March 3, 2017. Dkt. Nos. 1, 19. In its initial infringement contentions, served on July 12, 2017, CyWee asserted that Samsung had directly infringed claims 1, 3–5, 14–17, and 19 of the '438 patent, and claims 10 and 12 of the '978 patent. *See* Dkt. No. 291. In supplemental infringement contentions, served in September and October of 2018, CyWee continued to assert the same claims against Samsung. *See id.*

Claim construction in this case has been conducted, and discovery is nearly complete. The trial is set to begin on May 13, 2019. Dkt. No. 280.

1

This is one of eight similar cases that CyWee has filed against various companies in five different districts.  On June 14, 2018, Google, Inc., a defendant in one of the other cases, filed petitions for inter partes review ("IPR") asking the Patent Trial and Appeals Board ("PTAB") to invalidate claims 1 and 3–5 of the '438 patent and claims 10 and 12 of the '978 patent.  On December 11, 2018, the PTAB instituted inter partes review of the six claims identified by Google in its petitions, finding that Google had demonstrated a "reasonable likelihood of success" in showing that the challenged claims are unpatentable.  On January 8, 2019, Samsung Electronics Co., Ltd., moved to join Google's IPRs and filed its own IPR petitions, identifying Samsung Electronics America, Inc., as the real party in interest.  As a result of the IPR proceedings by Google and Samsung, six of the eleven asserted claims in this case will be reviewed for unpatentability by the PTAB.

On January 18, 2019, Samsung moved for a stay of further proceedings in this case pending the disposition of the IPR proceedings.  Dkt. No. 291.  The Court directed that briefing on the motion be conducted on an expedited basis.  Although CyWee has consented to stays in five of the other six cases that are concurrently pending,[1] on January 25, CyWee filed an opposition to the motion for a stay in this case.  Dkt. No. 297.  Samsung filed a reply on January 29, 2019.  Dkt. No. 300.  CyWee filed a sur-reply on February 5, 2019.  Dkt. No. 305.

## DISCUSSION

The question whether a stay of district court proceedings should be granted when inter partes review is instituted on some or all of the claims at issue in the district court litigation has

---

[1]  One of the original eight cases, *CyWee Group Ltd. v. Apple Inc.*, Case No. 4:14-cv-1853 (N.D. Cal.), has been settled.

arisen on a number of occasions, and the principles governing the decision whether to stay the case have been set forth in some detail.

A district court has inherent power to control its own docket, including the power to stay the proceedings before it. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997). In particular, the question whether to stay proceedings pending review by the Patent and Trademark Office ("PTO") of the validity of the patent or patents at issue in the lawsuit is a matter committed to the district court's discretion. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (request for a stay pending inter partes reexamination). A stay is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, Case No. 2:13-cv-1058, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015) (citing cases).

District courts typically consider three factors when determining whether to grant a stay pending inter partes review of a patent in suit: "(1) whether the stay will unduly prejudice the nonmoving party; (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set; and (3) whether the stay will likely result in simplifying the case before the court." *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, Case No. 6:15-cv-1095, 2018 WL 3656491, at *2 (E.D. Tex. Aug. 1, 2018) (citing cases). Based on those factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation. *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-cv-81, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

The related context of Covered Business Methods ("CBM") review provides guidance as to the principles that apply to stay applications in the IPR setting. In the uncodified portion of the Leahy-Smith America Invents Act that was directed to CBM review proceedings, Congress set

3

forth four factors that govern whether a stay should be granted pending CBM review proceedings before the PTAB.  Those four factors are:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011).  Those statutory factors largely track the three factors traditionally used by courts in determining whether to grant stays pending post-grant review proceedings, with a fourth factor added.  The fourth factor, which requires an inquiry into whether a stay will reduce the burden of litigation on the parties and the court, indicates that special attention should be given to minimizing the burdens of litigation.  While the four-factor test that Congress enacted for stays in CBM proceedings does not expressly extend to IPR cases, the policy considerations that apply in the two contexts are similar, and the Federal Circuit has held that the fourth factor set forth in the CBM statute may properly be applied to stays in IPR cases as well.  *See Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016); *see also Neuro Cardiac Techs., LLC v. LivaNova, Inc.*, Civil Action No. H-18-1517, 2018 WL 4901035, at *2 (S.D. Tex. Oct. 9, 2018); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346, 2013 WL 6044407, at *2 (W.D. Wis. Nov. 14, 2013).  The Court will therefore address the "burden of litigation" factor under the rubric of the "simplifying the issues" factor.

The legislative history of the AIA makes it apparent that Congress intended for district courts to be liberal in granting stays pending CBM review.  As Senator Schumer observed regarding the CBM review provision, Congress intended to place "a very heavy thumb on the scale

in favor of a stay being granted" once the PTAB instituted CBM review proceedings. 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Chuck Schumer).

Congress's desire to enhance the role of the PTO and limit the burden of litigation on courts and parties was not limited to the CBM review context. The legislative history indicates that Congress recognized that the same underlying policy considerations that apply to CBM review apply to inter partes review as well. *See* H. Rep. No. 112-98, Part I, at 48 (2011) (statutory post-grant review procedures were designed to be "quick and cost effective alternatives to litigation"); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (inter partes review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents") (statement of Sen. Chuck Grassley); *id.* at S5319 (daily ed. Sept. 6, 2011) (post-grant review of patents, including inter partes review, was meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Jon Kyl). In light of the parallel policies underlying the CBM and inter partes review proceedings, it is not surprising that courts have applied generally similar analysis to requests for stays in both settings.

The benefits of inter partes review are the same as those served by CBM review: giving the agency an opportunity to reconsider patents that have become the focus of litigation, relieving the courts of some of the burdens of deciding issues of obviousness and anticipation, and saving the courts from having to adjudicate infringement claims based on patents of questionable validity. For those reasons, courts have concluded that the "liberal policy" in favor of stays in CBM cases also applies to stays pending instituted IPR proceedings. *See Nautilus, Inc. v. ICON Health & Fitness, Inc.*, Case No. 1:17-cv-154, 2018 WL 4215095, at *2 (D. Utah Sept. 4, 2018); *Qualcomm Inc. v. Apple Inc.*, Case No. 3:17-cv-2403, 2018 WL 4104966, at *1 (S.D. Cal. Aug. 29, 2018); *Canfield Sci., Inc. v. Drugge*, Case No. 16-4636, 2018 WL 2973404, at *2 (D.N.J. June 13, 2018);

*Chrimar Sys. Inc. v. Ruckus Wireless, Inc.,* Case No. 16-cv-186, 2016 WL 5403595, at *3 (N.D. Cal. Sept. 26, 2016); *Drink Tanks Corp. v. GrowlerWerks, Inc.*, 2016 WL 3844209, at *2 (D. Or. July 15, 2016); *Gatearm Techs., Inc. v. Access Masters, LLC*, Civil Action No. 14-62697, 2015 WL 13752667, at *1 (S.D. Fla. July 13, 2015); *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, Case No. C-14-1575, 2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014).   As this Court summarized the point, "after the PTAB has instituted review proceedings, the parallel district court litigation ordinarily should be stayed."  *NFC Tech.*, 2015 WL 1069111, at *7.

The Court now turns to an analysis of each of the factors bearing on whether to grant a stay of the district court proceedings pending the resolution of the IPR proceeding.  While those factors inform the Court's inquiry, the three-part test is not a prescriptive template.  The court has the "discretionary prerogative to balance considerations beyond those captured by the three-factor stay test."  *Murata*, 830 F.3d at 1362.   "[U]ltimately the Court must decide stay requests on a case-by-case basis."  *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, Case No. 6:13-cv-384, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014); *see also Image Processing  Techs., LLC v. Samsung Elecs. Co.*, Case No. 2:16-cv-505, 2017 WL 7051628, at *1 (E.D. Tex. Oct. 25, 2017) ("motions to stay are highly individualized matters"); *Realtime Data LLC v., Actian Corp.*, Case No. 6:15-cv-463, at *2 (E.D. Tex. Nov. 29, 2016); *Lund Motion Prods., Inc. v. T-Max Hangzhou Tech. Co.*, Case No. SACV 17-1914, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019) ("the totality of the circumstances governs" (quoting *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1030-31 (C.D. Cal. 2013))); *Qualcomm Inc.,* 2018 WL 4104966, at *1; *Drink Tanks Corp.*, 2016 WL 3844209, at *2; *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, Case No. EDCV 14-1153, 2015 WL 1809309, at *2 (C.D. Cal. Apr. 20, 2015); *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014).

### 1. Prejudice

CyWee argues that the delay inherent in granting a stay in this case would be unduly prejudicial.  In its brief, CyWee relies mainly on the contention that any delay in the vindication of patent rights is prejudicial to a patent owner.  To be sure, the interest in prompt enforcement of patent rights is entitled to weight.  *See NFC Tech.*, 2015 WL 1069111, at *2 (citing cases).  However, that factor is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion.  *CyWee Grp. Ltd. v. Huawei Device Co.*, Case No. 2:17-cv-495, 2018 WL 4002776, at * 3 (E.D. Tex. Aug. 22, 2018); *VirnetX Inc. v. Apple Inc.*, Case No. 6:12-cv-855, 2018 WL 398433, at *3 (E.D. Tex. Jan. 12, 2018); *NFC Tech.*, 2015 WL 1069111, at *2.

Samsung argues that CyWee will suffer no undue prejudice from a stay because CyWee is a non-practicing entity and will be adequately compensated by a damages award in the event that a judgment is ultimately entered in its favor.  CyWee responds that it is not a non-practicing entity, that it "is in the business of developing and providing cutting-edge motion sensing technologies for handheld devices such as videogame controllers and smartphones," that it developed "an early prototype gaming smartphone that incorporated CyWee's proprietary sensor fusion technologies," and that it licenses its technology to others, and thus directly competes with companies such as Samsung that use their own sensor fusion technology or technology offered by third parties.  Dkt. No. 297, at 2.

Despite CyWee's claim to have participated in making a prototype gaming smartphone, nothing in CyWee's description of its current activities suggests that it is a competitor of Samsung's in the smartphone market.  Instead, CyWee's claim to status as a Samsung competitor is based on its contention that it licenses its technology and that Samsung's use of different sensor

fusion systems injures CyWee by denying it potential licensing fees.  But that is a claim that any non-practicing entity can make.  The objective of every non-practicing entity is to license, and thus monetize, its technology either retrospectively in the form of a damages award or settlement, or prospectively in the form of a royalty agreement.  Nothing in CyWee's characterization of its activities suggests any reason why a damages award, with pre-judgment interest, would not fully compensate it for any injury served, even if there is some delay in the resolution of the litigation.

In such cases, the Federal Circuit has held, "[a] stay will not diminish the monetary damages to which [the plaintiff] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy."  *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014); *see also Stragent LLC v. BMW of N. Am, LLC*, Case No. 6:16-cv-446, 2017 WL 3709083, at *2 ("mere delay in collecting those damages does not constitute undue prejudice" (quoting *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, Case No. 13-ca-1025, 2015 WL 3773014, at *2 (W.D. Tex. June 16, 2015))).  And in a case such as this one, where CyWee is not a competitor of Samsung's in the market for products that contain the technology at issue, the prospect of an injunction is low.  Further undermining CyWee's suggestion as to the urgency of obtaining judicial relief is the fact that CyWee delayed for more than three years after the issuance of the '438 and '978  patents before bringing suit against Samsung.  *See VirtualAgility*, 759 F.3d at 1319 (undue prejudice not found where plaintiff waited nearly a year after the patent issued before bringing suit); *Lund Motion Prods.*, 2019 WL 116784, at *2 ("Plaintiff's own delay in bringing the instant action renders its arguments of undue prejudice unpersuasive.").

In its reply brief, Samsung offers evidence that currently CyWee "is merely a holding company and does not sell any products or services."  Dkt. No. 300, at 1; *see* Dkt. No. 300-2, at 3.

In its surreply brief, CyWee responds with evidence that CyWee Group Ltd. has a sister company, CyWee Motion, that was formed as a "more focused business unit," and that "has routinely licensed its sensor fusion solutions and software to competitors in the mobile technology space." Dkt. No. 305, at 1–2.  Quoting testimony by a CyWee Motion corporate officer, CyWee contends that "the CyWee entities" would "receiv[e] more in royalties if companies like Samsung didn't steal their technology."  *Id.* at 2.  Based on that testimony, CyWee argues that it is not a non-practicing entity, and that it should not be treated as such for purposes of determining whether a stay would prejudice CyWee.

Nothing in CyWee's presentation persuades us that it should be regarded as a competitor of Samsung's.  The testimony cited by CyWee acknowledges that CyWee does not currently produce any products, but owns and seeks to license at least the two patents at issue in this case. Based on the testimony of the CyWee Motion corporate officer, CyWee argues that it has "routinely licensed its sensor fusion solutions and software to competitors in the mobile technology space."  Dkt. No. 305, at 2.  The evidence cited by CyWee shows that in the past CyWee has licensed its technology on the condition that the licensee use CyWee software in the licensees' products.  Dkt. No. 305-3, at 8–10.  However, the evidence also shows that at about the time CyWee Motion was formed, in September 2014, CyWee "made the business decision to focus on patent licensing," and has "license[d] its motion sensing technologies to other people, . . . [i]ncluding licensing [the] 438 patent and 978 patent to other companies."  Dkt. No. 300-2, at 3; Dkt. No. 305-3, at 15.

Based on that evidence, the Court concludes that although CyWee (i.e., plaintiff CyWee Group Ltd., as opposed to CyWee Motion) may have been involved in the manufacture and sale of products in the past, it is properly characterized at present as a non-practicing entity focused on

patent licensing.  The activities of CyWee's related company, CyWee Motion, are irrelevant to the prejudice inquiry, since CyWee Motion is not the patent owner and is not a party to this action. *See Poly-Am., L.P. v. GSI Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (sister companies "may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure—in this case, the inability of the patent holder to claim the lost profits of its non-exclusive licensee").  As such, any injury to CyWee Motion would not serve as the basis for a claim of prejudice to CyWee Group Ltd.  In any event, nomenclature aside, nothing set forth in CyWee's briefs persuades the Court that an award of damages would be inadequate as a remedy if Samsung is ultimately found to have infringed CyWee's patents.

CyWee's next argument regarding prejudice is that Samsung did not act reasonably promptly in filing its motion for a stay.  CyWee first complains that Samsung "made no effort to stay this case for over seven months after the Google IPRs were filed."  Dkt. No. 294, at 10 (emphasis in original).  But Samsung cannot be faulted for that delay.  This Court (and many others) have made clear that an application for a stay after an IPR petition has been filed but before the petition has been granted is very likely to be denied.  *See NFC Tech.*, 2015 WL 1069111, at *4 ("While the PTAB's decision to institute inter partes review ordinarily means that there is a substantial likelihood of simplification of the district court litigation, that likelihood is far more speculative before the PTAB decides whether to institute inter partes review."); *Trover Grp., Inc. v. Dedicated Micros USA*, Case No. 2:13-cv-1047, 2015 WL 1069179, at *5–6 (E.D. Tex. Mar. 11, 2015); *Freeny v. Apple Inc.*, Case No. 2:13-cv-361, 2014 WL 3611948, at *1 (E.D. Tex. July 22, 2014).  It would have been virtually pointless for Samsung to have sought a stay before the

IPR was instituted, as this Court would have almost certainly denied it; the decisions of courts in this district as well as other district courts make that abundantly clear.

CyWee makes the further point that Samsung delayed for five weeks after the institution of Google's IPR before filing its motion for a stay.  During that period, according to CyWee, Samsung "persisted in aggressively litigating this case."  Dkt. No. 297, at 10.  CyWee complains, in particular, that it was forced to expend substantial resources in preparing for and defending the depositions of its experts during that period.

Google's IPR was instituted on December 11, 2018; Samsung moved to join that IPR on January 8, 2019; Samsung sought CyWee's agreement to a stay pending the resolution of the IPR on January 15, 2019, *see* Dkt. No. 297-15; and when CyWee on January 16, 2019, declined Samsung's invitation to join in a motion for a stay, *see id.*, Samsung filed the present motion for a stay two days later, on January 18, 2019.  It is true that Samsung could have been more prompt in moving for a stay once the PTAB instituted the IPR proceedings in Google's case.  Nonetheless, a period of five weeks is not exorbitant, particularly in light of the intervening holiday period and the need for Samsung to file papers seeking to join Google's IPR.  Moreover, the Court does not perceive any severe and unilateral prejudice to CyWee from that five-week delay.  Even if Samsung had filed its motion for a stay within, say, two weeks of the date on which the PTAB instituted the IPR proceedings, the briefing of the stay motion would have extended until the last week of January 2019, and the Court would have needed at least some time to consider the motion.  Thus, even in the event of a prompt filing on Samsung's part, CyWee would not have been able to avoid the need to continue with the expert depositions in the interim.  Moreover, while it is true that CyWee has had to engage in significant discovery-related work during the period after the IPRs were instituted, that work, now done, will have moved CyWee's preparation for the court

case closer to completion for the time when the IPR is concluded and this litigation resumes.  Also, during the same period, Samsung was facing the same discovery deadlines as CyWee and bore the expenses of preparing for, and conducting the expert depositions.  So the expenses incurred during the period of delay were not borne by CyWee alone.[2]

CyWee next argues that a stay would give Samsung an unfair tactical advantage because Samsung would have "the luxury of many months to examine and dissect CyWee's expert reports and depositions in order to prepare dispositive motions and *Daubert* motions that would otherwise be due on February 6, 2019," and the motion for a stay would "allow Samsung to escape this looming deadline."  Dkt. No. 297, at 11.  That argument no longer has any force.  February 6 has come and gone, and Samsung has filed its dispositive motions and its *Daubert* motions, so there is no prejudice to CyWee from any tactical benefit Samsung might have been thought to have obtained from the delay in the due dates for Samsung's pretrial motions.  To the contrary, a stay issued at this point would arguably benefit CyWee by giving it extra time to respond to Samsung's motions.

Furthermore, CyWee makes no claim of loss of memory, aged witnesses, or any other extraneous burdens imposed by the delay that would result from a stay.  In a footnote (Dkt. No. 297, at 6 n.22), CyWee complains that the work connected with the depositions "will have to be completely redone to refresh the witnesses' recollection if the case were delayed by a year or more."  That argument is unpersuasive.  There is no reason the depositions would need to be

---

[2]    CyWee does not argue that the stay should be denied because it was Google, not Samsung, that filed the IPR petitions that were granted in December 2018.  While that fact pattern is unusual, and Samsung has not explained why it did not file petitions on its own behalf prior to Google's petition, Samsung's decision is not fatal to its request for a stay.  *See E.Digital Corp. v. Arcsoft, Inc.*, Case No. 15-cv-56, 2016 WL 452152, at *1 (S.D. Cal. Feb. 3, 2016) (stay granted after IPR of a third party was granted).

redone, and as for refreshing the witnesses' recollection, the transcripts of the depositions that are presumably available will make that process much less expensive than preparing for and conducting the depositions in the first instance.

Finally, the Court notes that CyWee has consented to stays pending the IPR proceedings in all but one of the other co-pending cases. While not dispositive, CyWee's acquiescence in stays in those five cases tends to impeach its claim that it will be unduly prejudiced by delay in the enforcement of its rights under the patents in suit in each of those cases.

In sum, the Court finds that the only element of prejudice that CyWee has been able to demonstrate is the prejudice that always accompanies a delay in the disposition of a case—a postponement in the plaintiff's obtaining a judgment. As that is the only source of prejudice shown in this case, the Court regards the prejudice factor as cutting in CyWee's favor, but only slightly so.

## 2. The State of the Proceedings

This action was instituted two years ago. By the time the motion to stay was filed, claim construction had been conducted and discovery was nearly complete.[3]  However, the most burdensome parts of the case—filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future. *See Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1005 (Fed. Cir. 2015) (noting, in a similar situation, where the trial was "mere months away," that "[d]espite the substantial time and effort already spent in this case, the most burdensome task is yet to come").

---

[3]  The state of the proceedings is generally assessed as of the date the motion to stay is filed. *VirtualAgility*, 759 F.3d at 1317.

13

Courts in this district have held that stay motions filed late in the pre-trial period are less favored than those filed at the outset of the case.  However, the courts have noted, as did the Federal Circuit in *Smartflash* case, that even after the completion of claim construction and most of the discovery in the case, the most burdensome part of the case, for both the parties and the court, is the period immediately before, during, and after trial.  That fact informs the court's judgment as to the significance of the stage of the case at which the stay motion is filed.  As the court explained in *Norman IP Holdings*, 2014 WL 5035718, at *3 (quoting *Destination Maternity Corp. v. Target Corp.*, No. Civ. A. No. 12-5680, 2014 WL 1202941, at *6 (E.D. Pa, Mar. 24, 2014)):

> "A case need not be in its infancy to warrant a stay.  Courts often find the stage of litigation weighs in favor of a stay if there remains a significant amount of work ahead for the parties and the court, even when the parties and/or the court have already devoted substantial resources to the litigation."

Based on that observation, courts in this district have granted stays at various points roughly equivalent to the stage of this case, where discovery was nearly complete and the trial date was four months away at the time the stay motion was filed.  In *Motion Games, LLC v. Nintendo Co.*, Case No. 6:12-cv-878, 2015 WL 13404313 (E.D. Tex. June 8, 2015), the court granted a stay when the trial was only four months away and fact and expert discovery had been completed.  The court explained that "[w]hile it is true that significant resources have been invested to this point, there is little doubt that a substantial amount of pretrial, trial and post-trial resources have yet to be expended."  *Id.* at *1; *see also Image Processing Techs.*, 2017 WL 7051628, at *1 (stay granted three weeks before trial); *SSL Servs., LLC v. Cisco Sys., Inc.*, Case No. 2:15-cv-433, 2016 WL 3523871, at *2 (E.D. Tex. June 28, 2016) (stay granted 2½ months before trial); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, Case No. 2:15-cv-11, 2016 WL 1162162, at *2 (E.D. Tex. Mar. 23, 2016) (stay granted two months before trial); *SynQor, Inc. v. Vicor Corp.*, Case No. 2:14-cv-287, 2015 WL 12916396, at *4 (E.D. Tex. Nov. 24, 2015) (stay granted seven weeks before

14

pretrial conference: "Much work has been done, but there is still substantial work that needs to be done by the Court and the parties before this case will be ready for trial.  A stay has the potential to reduce costs and avoid the expenditure of significant resources that would go into trial preparation and trial.").

Denying a stay because of the progress of the case to this point would impose significant expenses on the parties that might be avoided if the stay results in the simplification of further court proceedings.  Because the case is relatively far along, the Court regards this factor as cutting somewhat against issuing a stay, but not so much as to overcome the counterbalancing benefits that could result from a stay.

### 3.  Simplification of the Issues

The most important factor bearing on whether to grant a stay is whether the stay is likely to simplify the issues at trial.  As this Court explained in *NFC Technology*,

> Congress's purpose in creating an inter partes review procedure was to allow the administrative agency that issues patents to consider new information bearing on whether those patents should be canceled or confirmed.  Giving the agency the authority to consider the validity of patents in the inter partes review process was designed in large measure to simplify proceedings before the courts and to give the courts the benefit of the expert agency's full and focused consideration of the effect of prior art on patents being asserted in litigation.

*NFC Tech.*, 2015 WL 1069111, at *4; *see In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985) ("When the patent is concurrently involved in litigation [one function of reexamination] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.").

In this case, the likelihood of some or all of those benefits flowing from inter partes review is high.  If the proceedings before the PTAB result in confirming the validity of the claims being asserted in court, the defendant will be estopped from challenging the validity of those claims on any ground that was, or could reasonably have been, asserted in the inter partes proceeding.  35

U.S.C. § 315(e)(2).  On the other hand, if the proceedings result in cancellation of some or all of the asserted claims that have been challenged in the IPR proceeding, a large portion of the litigation will fall away.

CyWee responds with several arguments against issuance of a stay.  First, CyWee argues that the IPR may not be instituted after all, because CyWee has sought rehearing of the institution decision by the PTAB.  Dkt. No. 297, at 12.  In fact, the PTAB has recently denied CyWee's petition for rehearing of the institution decision, so that argument fails.

Second, CyWee argues that the fact that Samsung is not relying on the prior art references that are the focus of Google's IPR petition means that Samsung "has precluded itself from claiming that any of the prior art at issue in the Google IPRs is invalidating art in this case," and that Samsung is estopped from asserting invalidity based on any of the Google IPR references because it has not relied on those references in its invalidity contentions.  Dkt. No. 297, at 13–14.

CyWee misses the point of the IPR proceedings.  If the PTAB holds that the claims at issue in the IPR are invalid, the result will be that those claims will be canceled, and they will not be available to CyWee to press in this or any other ongoing litigation.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot.").  Therefore, for purposes of considering the possible impact of the IPR on this case, it does not matter whether Samsung has raised—or can raise—the same prior art references that are raised in the IPR proceeding.

 Finally, CyWee points out that the PTAB's order granting inter partes review did not include all of the asserted claims of the '438 patent.  In particular, five of the asserted claims— claims 14 through 17 and 19 of the '438 patent—were not included in Google's petition for inter

16

partes review and thus are not part of the IPR proceeding.  For that reason, even if the PTAB rules all of the claims before it to be invalid and cancels them all, those five claims will not be invalidated.  CyWee argues that the stay should therefore be denied.

While the case for a stay is stronger when the PTAB institutes IPR proceedings on all of the asserted claims in the litigation, courts in this district have regularly issued stays in cases in which IPR proceedings have been instituted on fewer than all the claims asserted in the related litigation.  *See Stingray Music USA, Inc. v. Music Choice*, Case No. 2:16-cv-586, 2017 WL 9885167, at *2 (E.D. Tex. Dec. 12, 2017); *Image Processing Techs.*, 2017 WL 7051628, at *1; *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, Case No. 2:16-cv-642, 2017 WL 9885168, at *1 (E.D. Tex. June 13, 2017); *Realtime Data, LLC v. Hewlett Packard Enter. Co.*, Case No. 6:16-cv-86, 2017 WL 3712916, at *3 (E.D. Tex. Feb. 3, 2017); *Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, Case No. 6:15-cv-59, 2016 WL 4394485, at *3 (E.D. Tex. May 12, 2016); *Personal Audio LLC v. Google, Inc.*, Case No. 1:15-cv-350, 2015 WL 12915558, at *3 (E.D. Tex. Nov. 3, 2015); *NFC Tech.*, 2015 WL 1069111, at *7.  Courts in other districts have done so as well.  *See Parsons Xtreme Golf LLC v. Taylor Made Golf Co.*, Case No. CV-17-3125, 2018 WL 6242280, at *5 (D. Ariz. Nov. 29, 2018); *Clinicomp Int'l, Inc. v. Cerner Corp.*, Case No. 17-cv-2479, 2018 WL 5617694, at *4–5 (S.D. Cal. Oct. 30, 2018); *Canfield*, 2018 WL 2973404, at *2; *E.Digital Corp. v. Arcsoft, Inc.*, Case No. 15-cv-56, 2016 WL 452152, at *1–2 (S.D. Cal. Feb. 3, 2016); *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1027–28  (N.D. Cal. 2014) (citing cases).  As those cases make clear, even when IPRs are instituted on fewer than all the asserted claims, the policies favoring simplification and the reduction of litigation burdens on the parties and the court are often applicable.  That is true in this case, for several reasons.

First, if the PTAB invalidates all of the claims before it, the case will unquestionably become simpler.  One patent will be removed from the case altogether, and the task of dealing with the remaining five related claims from the other patent—for the parties, the jury, and the Court— will become much easier than it would have been with the original eleven claims from two different patents.  In a case involving technology as complex as the technology in this case, which is sure to challenge the ability of the jury to absorb and rationally decide issues of infringement and invalidity, there is a particularly high premium on simplification.

Second, even if the PTAB does not invalidate all (or even any) of the asserted claims, any conclusion that the PTAB reaches will have a likely effect on the litigation by limiting the arguments Samsung can make regarding validity.  Samsung has expressly acknowledged that the statutory estoppel provision, 35 U.S.C. § 315(e)(2), will bar it from seeking to invalidate the claims that were included in the IPR on any ground that was raised in the IPR petitions or could have been raised in those petitions.  *See* Dkt. No. 291, at 4–5; Dkt. No. 300, at 5.[4]

---

[4]  Before the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018), there was a split among district courts as to whether, in light of the Federal Circuit's decision in *Shaw Industries Group v. Automated Creel Systems, Inc.*, 817 F.3d 1293 (Fed. Cir. 2016), the section 315(e)(2) estoppel applied to invalidity grounds that could reasonably have been raised in the petition but were not.  Following *SAS*, and in light of the Federal Circuit's subsequent decision in *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1360 (Fed. Cir. 2018), it appears that the section 315(e)(2) estoppel applies to any ground that was not included in the IPR petition but reasonably could have been.  *See SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 601–02 (D. Mass. 2018); *Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*, Case No. 1:13-cv-2072, 2017 WL 1045912, at *11–12 (D. Del. Feb. 22, 2017), *aff'd,* 721 F. App'x 994 (Fed. Cir. 2018), and cross-appeal dismissed, 2017 WL 5897705 (Fed. Cir. Sept. 20, 2017) (holding that section 315(e)(2) estoppel also applies to a party joining an IPR, because the joining party "reasonably could [] raise[] its prior art combinations during the IPR proceedings," even though doing so might negatively affect its request for joinder).  In any event, Samsung has acknowledged that the scope of the estoppel against it, in the event the PTAB upholds the patentability of any of the claims in the IPR, will bar Samsung from arguing invalidity based on any patent or printed publication that was raised before the PTAB or reasonably could have been raised, and the Court will hold Samsung to that concession.

Third, allowing the PTO to adjudicate the validity of the six claims before it in the two IPR proceedings reduces what otherwise would be unavoidable duplication of effort and a possibility of inconsistent results between the administrative agency and the court. *See Evolutionary Intelligence, LLC v. Apple, Inc.*, No. C 13-4201, 2014 WL 93954, at *3 (N.D. Cal. Jan. 9, 2014) (a stay "will minimize the risk of inconsistent results and conserve resources"; there is "little benefit to be gained from having two forums review the validity of the same claims at the same time"); *Evolutionary Intelligence LLC v. Yelp Inc.*, Case No. C-13-3587, 2013 WL 6672451, at *6 (N.D. Cal. Dec. 18, 2013); *Microsoft Corp. v. Tivo Inc.*, No. 10-cv-240, 2011 WL 1748428, at *5 (N.D. Cal. May 6, 2011).

Fourth, even though claims 14–17 and 19 are not directly at issue in the IPR proceeding, the validity of those claims could be affected by the PTAB's analysis of the claims before it, which involve related technology. While the Court will not speculate as to how the PTAB will rule in this case, *see VirtualAgility,* 759 F.3d at 1313 ("The stay determination is not the time or the place to review the PTAB's decisions to institute a CBM proceeding."), the likelihood that the IPR proceeding will simplify this litigation and reduce the burden on the parties and on the court is sufficiently high that the Court regards this factor as cutting strongly in favor of granting a stay.

Finally, even if the PTAB does not invalidate any of the claims in the pending IPR proceedings, the expertise of the PTAB judges in this field of art is likely to be of considerable assistance to the Court in this complex case. *See PersonalWeb Techs., LLC v. Facebook, Inc.*, Case No. 5:13-cv-1356, 2014 WL 116340, at *2 (N.D. Cal. Jan. 13, 2014) ("IPR provides a path to receive expert guidance from the PTO"); *Evolutionary Intelligence, LLC v. Apple, Inc.*, 2014 WL 93954, at *2; *E-Watch, Inc. v. Lorex Can., Inc.*, Civil Action No. H-12-3314, 2013 WL 5425298, at *2 (S.D. Tex. Sept. 26, 2013) ("At a minimum, even assuming that all the patents-in-

suit survive the reexamination intact, the USPTO's insight and expertise regarding the validity of the patents would be of invaluable assistance to this court."); *TimeBase Pty Ltd. v. Thomson Corp.*, Civil No. 07-1687, 2008 WL 1959061, at * 1 (D. Minn. May 6, 2008); *see generally Ethicon, Inc.*, 849 F.2d at 1428 (even if reexamination does not lead to claim amendment or cancellation, "it could still provide valuable analysis to the district court"); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." Accordingly, in light of the fact that the PTAB has already instituted review of both asserted claims in one of the two patents in suit in this case and several of the asserted claims of the remaining patent, the "simplification/burden" factor cuts strongly in favor of granting a stay in this case pending the completion of the inter partes review process.[5]

## CONCLUSION

After weighing all the factors that bear on whether to grant a stay pending inter partes review, the Court concludes that the "prejudice" factor slightly favors CyWee, the "state of the proceedings" factor somewhat favors CyWee, and the "simplification of the issues" factor heavily favors Samsung. Considering all of the factors in light of the totality of the circumstances, the Court concludes that a stay is warranted. Accordingly, the Court will grant Samsung's motion to stay all proceedings in this case pending the completion of the inter partes review proceedings

---

[5] Once the PTAB makes its decision in this case, the balance of interests will change. It will not necessarily be warranted for the Court to continue the stay through any appellate proceedings following the PTAB's decision. That is an issue that can be revisited after the PTAB renders its decision.

before the PTAB.  The parties are directed to advise the Court within five days after the PTAB

issues its decision in the inter partes review proceedings.

IT IS SO ORDERED.

SIGNED this 14th day of February, 2019.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE